IN THE UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BRENDA S. HOBSON** | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil Case No. AW-06-cv-3195 |
| | : | |
| **HAIR CUTTERY C/O RATNER COS., LC** | : | |
| | : | |
| | : | |
| Defendants | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Brenda S. Hobson ("Hobson"), by and through her undersigned counsel, Mark G. Chalpin, Esq., and respectfully files her Opposition to Defendant Hair Cuttery c/o Ratner Cos., LC's ("Hair Cuttery") Motion for Summary Judgment ("MSJ") pursuant to Fed. R. Civ. Pro. 56.

Hair Cuttery argues that Hobson: 1) failed to file a charge with the EEOC within 300 days of her termination on March 23, 2005; and 2) fails to state a prima facie case of discriminatory charge or, alternatively, fails to make a pretextual case as to Hair Cuttery's proffer of a legitimate, non-discriminatory reason for her termination.

A proposed Order is attached.

**COUNTERSTATEMENT OF THE FACTS**

Hobson is African-American and her country of origin is the Virgin Islands. *See* Third Amended Complaint at ¶ 3. She started employment as a hair stylist with Hair Cuttery in 2003. *See id*.

1

Upon returning from a company trip to Las Vegas in late 2004, Hobson complained loudly in one phone conversation with Kari Waldack at Hair Cuttery headquarters concerning not being paid a refund for a class for which she had paid and that it would be like stealing if she did not get her money back. *See* Tab A to MSJ at 67-69, 76, 80.

On March 17, 2005, receptionist Willette Newman ("Newman") assigned a customer to Hobson as the next available stylist although another customer had come in first. *See* Tab A to MSJ at 116-117. The proper procedure was to assign the longest waiting customer to the next available stylist. *See id*. Hobson told Newman that she should have assigned her the longest waiting customer but did not raise her voice at Newman. *See id*. at 118, 121. Hobson then serviced the customer assigned to her by Newman. *See id*.

When Hobson finished servicing this customer, she returned to the receptionist area and rang out the customer, as Newman was not present. *See id*. at 119, 122. She began typing into the computer at the receptionist area to see how Newman was assigning customers. *See id*. at 119, 122-123. Newman returned to the receptionist area, became very angry and asked Hobson what she was doing. *See id*. at 119, 124. Then, Newman, without justification or provocation by Hobson, punched Hobson on her left hand so severely that she suffered nerve damage to a finger in her left hand. *See id*. at 124-125; Third Amended Complaint at ¶ 5. Hobson told Newman repeatedly not to put her hands on her again and was angry. *See* Tab A to MSJ at 124-125.

Hobson then told Assistant Salon Leader Tristaca Edwards that she was going to call Hair Cuttery headquarters. *See id*. at 127. She then called headquarters and spoke to

Kevin Waters ("Waters"), Hair Cuttery's Director of Employee Relations, about being punched by Newman. *See id* at 128. He suggested that Hobson call Salon Leader Trish Farmer ("Farmer"), which she did. *See id*.

On March 22, 2005, Hobson asked her district manager, Tammy LeBow ("LeBow") to transfer to an Annapolis Hair Cuttery Salon so that she could escape the hostile work environment at the Bowie salon. *See id*. at 129; Third Amended Complaint at ¶ 6. The following day, Waters and LeBow met with Hobson and told her she was terminated. See Deposition Transcript of LeBow at Exhibit 1 at 27-28. Hair Cuttery terminated Hobson solely due to the March 17, 2005 incident with Newman and not at all due to the Las Vegas refund matter. *See id*. at 30-31.

A Caucasian hair stylist not from the Virgin Islands, Mary Marucci ("Marucci"), had violated Hair Cuttery policy by refusing to cut African-American client's hair and deliberately overcharging another customer. *See* Third Amended Complaint at ¶ 7; Tab A to MSJ at 152, 154-159. Marucci also drank alcohol in the back of the salon with Farmer's husband. *See* Tab A to MSJ at 153, 161-162. Instead of disciplining Marucci, Hair Cuttery transferred her to another salon. *See* Third Amended Complaint at ¶ 7; Tab A to MSJ at 152. Other Caucasian hair stylists not from the Virgin Islands had also not violated Hair Cuttery policy by refusing to cut the hair of African-American customers and being late frequently without calling in to the salon and were not disciplined but rather allowed to transfer to other Hair Cuttery salons. *See* Third Amended Complaint at ¶ 8; Tab A to MSJ at 153, 159-160, 163.

At the time of her termination, Hobson was performing her job duties at a level that met the Hair Cuttery's legitimate expectations and was not violating Hair Cuttery

3

policy in providing service to Hair Cuttery clients. *See id.* at ¶ 10; Deposition Testimony of Farmer at Exhibit 2 at 12-13. After her termination, her position either remained open or was filled by a similarly qualified applicant. *See* Third Amended Complaint at ¶ 11; Exhibit 1 at 38.

Hobson returned a completed intake questionnaire form prior to her initial interview with the EEOC on June 2, 2005 concerning her charge of employment discrimination against Hair Cuttery. See Tab F to MSJ, Tab A at 41-43. Hair Cuttery first learned of Hobson's charge of employment discrimination after August 30, 2006 mailed a document concerning the charge to it. *See* Tab H to MSJ.

## ARGUMENT

A.   **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure requires a court to grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See id.* at 248, 106 S.Ct. 2505.  In determining whether a party is entitled to summary judgment, the record is viewed in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

B. **Hobson Filed a Charge of Discrimination with the EEOC on June 1, 2005 within 300 days of her Discharge**

Hair Cuttery repeats its argument asserted in its earlier Motions to Dismiss that Hobson failed to timely file a charge of discrimination with the EEOC under Title VII, and that the "intake questionnaire" form that was received by the EEOC prior to her June 2, 2005 interview with the EEOC did not constitute a charge sufficient to meet the 300 day charge filing requirement.  Hair Cuttery contends that language on the intake questionnaire form that Hobson submitted prior to the June 2, 2005 interview makes clear that filling out and submitting the form did not constitute the filing of a charge and that Hair Cuttery was not timely served by the EEOC with the asserted charge.

As to the form submitted by Hobson to the EEOC prior to the June 2, 2005 interview, Gerald S. Kiel ("Kiel"), the Director of the Baltimore Field Office of the EEOC responsible for the oversight of the intake, processing, and investigations of all charges assigned to his office, averred that the form submitted by Hobson to the EEOC was timely filed on June 1, 2005 in accordance with Title VII of the Civil Rights Act of 1964 and the EEOC's Regulations and Procedures.  *See* Affidavit of Kiel at Exhibit 1 at ¶ 6 to Hobson's Opposition to Motion to Dismiss Amended Complaint.  He further averred

that a document other than an official EEOC Form 5, including the form submitted by Hobson, can constitute a charge of discrimination under Title VII and EEOC Regulations. *See id*. at ¶ 7. As to the contents of the form submitted by Hobson, she: 1) provided her name, address and telephone number (s*ee* Tab F to MSJ at 1); 2) provided the name and address of the employer (*see id*. at 1); 3) gave a clear, concise and detailed statement of the facts, including pertinent dates, names of individuals involved, the nature of the discrimination, and the circumstances supporting the charge (*see id*. at 1-5); and signed the form under oath (*see id*. at 4).

The Court correctly rejected Hair Cuttery's argument previously and should reject it again. Not only is the case law cited by Hobson still dispositive in her favor, but also the Supreme Court has weighed in in *Federal Express Corp. v. Holowecki*, ___ U.S. ___, 06-1322, decided February 27, 2008 ("*Holwecki*").[1] Although *Holowecki* involves the filing of a charge under the Age Discrimination in Employment Act of 1967 ("ADEA"), it nonetheless is apposite in several regards. In *Holowecki*, as in the instant case, the issue was whether a filled out and submitted intake questionnaire can constitute a charge. In ruling that an intake questionnaire can constitute a charge, the *Holowecki* Court held that the EEOC's applicable regulation for filing a charge is controlling. *See Holwecki* at 6. It also held that the individual's right to sue is not conditioned upon the EEOC fulfilling its mandatory duty of notifying the employer of the charge within ten days of its filing. *Id*. at 12-13. "It would be illogical and impractical to make the definition of

---

[1] At the motion hearing on Hair Cuttery's Motion to Dismiss the Third Amended Complaint on August 24, 2007, counsel for Hair Cuttery mentioned the pendency of *Holowecki* before the Supreme Court and that it could require reversal of the Court's denial of that dispositive motion. Hobson contends that *Holowecki* instead supports her claim that she timely filed a charge within 300 days of her termination and that the failure of the EEOC to serve that charge on Hair Cuttery within ten days of its filing is not grounds for dismissal of the instant lawsuit.

charge dependent upon a condition subsequent over which the parties have no control." *Id*. at 13.

29 C.F.R. § 1601.12 governs the contents of a charge under Title VII to the EEOC and states in pertinent part:

"(a)   Each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of…"

The Fourth Circuit applied this regulation in holding an affidavit as clearly sufficient to constitute a charge of discrimination under 42 U.S.C. § 2000e-5 to the EEOC in *Waiters v. Robert Bosch Corp.*, 683 F.2d 89, 91-92 (4th Cir. 1982) ("*Waiters*"). Specifically, the *Waiters* Court found the affidavit to constitute a charge because it identified the parties, the nature of the discrimination, the date of the discriminatory act and the circumstances supporting the charge. *Waiters*, 683 F.2d at 92. The *Waiters*

7

Court considered the plaintiff's omission of the employer's address a technical defect which did not affect the substance of the charge and which could be easily remedied. *Id*.

The Fourth Circuit, relying in part on *Waiters*, held that a timely but unsworn letter that was substantively sufficient under 29 C.F.R. § 1601.12 could constitute a charge if later supplemented with a sworn statement in *Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002) ("*Edelman*").

The above case law makes clear that the substance, not the form, of the document alleged to be sufficient to constitute a charge of discrimination under 42 U.S.C. § 2000e-5 is controlling. Hobson argues that the intake questionnaire she submitted to the EEOC prior to her June 2, 2005 interview was sufficient to constitute a charge of discrimination because it was "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *See* 29 C.F.R. § 1601.12(b). Moreover, it was sworn. *See Edelman*. Therefore, Hobson filed a charge of discrimination with the EEOC within 300 days of her termination by Hair Cuttery on March 22, 2005.

Concerning the EEOC's failure to serve the intake questionnaire it received from Hobson on Hair Cuttery within ten days of its filing, Hobson is not responsible for EEOC's failure to so notify Hair Cuttery. *See Holowecki* at 12-13; Waiters, 683 F.2d at 92.

**C.      Hobson Establishes a *Prima Facie* Case of Discriminatory Discharge**

Hair Cuttery argues that Hobson fails to establish a *prima facie* case of discrimination because she failed to present evidence that co-workers at Hair Cuttery who were not African-American or from the Virgin Islands were not disciplined as severely as she for misconduct of comparable seriousness. Hair Cuttery cites to cases involving

discriminatory enforcement of employee disciplinary measures, *Cook v. CSX Transportation Corp.*, 988 F.2d 507 (4th Cir. 1993); *Erskine v. Board of Education*, 197 F. Supp. 2d 399 (D. Md. 2002); and *Ingram v. Giant Food, Inc.*, 187 F. Supp.2d 512 (D. Md. 2002).

Again, Hair Cuttery misconstrues the gravamen of Hobson's claim for discriminatory discharge. Hobson is claiming that she did not commit any wrongdoing or violation of Hair Cuttery policy in the March 17, 2005 incident when she was assaulted by Newman and then terminated as a result of the incident. Rather, she has established that she was terminated on the basis of her race and national origin and that similarly situated co-workers who did violate Hair Cuttery policy were not only not terminated but not even disciplined.

To establish a *prima facie* case of race and national origin discrimination under the familiar *McDonnell-Douglas* three prong approach, a plaintiff has the burden of proving: 1) she is a member of a protected class, 2) she suffered adverse action, 3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action, and 4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).

Viewing the record in the light most favorable to Hobson, she has established a *prima facie* case as follows: 1) as an African-American and native of the Virgin Islands, she is a member of protected classes (*see* Third Amended Complaint at ¶¶ 3, 18, and 26); 2) she was terminated (*see id.* at ¶¶ 6, 9, 20-21 and 28-29; Exhibit 1 at 27-28); 3) she was performing her job duties at a level that met Hair Cuttery's legitimate expectations at the

time of her termination (*see* Third Amended Complaint at ¶¶ 10, 22 and 30; Exhibit 2 at 12-13); and 4) her position remained open or was filled by similarly qualified applicants who were not black or natives of the Virgin Islands (*see id*. at ¶¶ 11, 23 and 31; Exhibit 1 at 38. Therefore, Hobson has established a *prima facie* case of discriminatory discharge based on race and national origin.

D. **The Investigative Statements Should Be Excluded as Evidence because They Were Not Produced to Hobson in Discovery and their Exclusion Creates a Genuine Dispute as to whether Hair Cuttery Had an Honest Belief that She Was the Aggressor and Falsely Reported an Assault by Newman in the March 17, 2005 Incident with Newman**

Hair Cuttery asserts that Hobson cannot raise a genuine issue of fact that Hair Cuttery's proffer that it terminated her due to its honest belief that she commenced an altercation with Newman and falsely reported an assault by Newman on March 17, 2005 was pretextual. Hobson counters that Hair Cuttery's belief was based on investigative statements by Edwards, hair stylist Crystal Love and Newman that were not produced in discovery to her despite her discovery requests for such documents and that these documents, which are attached to the MSJ at Tabs N, O and P, should be excluded as evidence.

In her Request for Production of Documents, Hobson made no less than five requests to which the investigative statements were responsive. *See* Plaintiff's First Request for Production of Documents to Defendant at Exhibit 3 at Request Nos. 2, 11, 12, 13 and 19. Request No. 2 seeks all exhibits that Hair Cuttery will attempt to introduce at trial. *See id*. Hobson asserts that the investigative statements are an important facet to Hair Cuttery's proffer of a legitimate, non-discriminatory reason for terminating Hobson and would clearly be exhibits Hair Cuttery will attempt to introduce

10

at trial. Request No. 11 seeks documents pertaining to any affirmative defenses that Hair Cuttery intends to raise. *See id*. Hobson claims that the investigative statements pertain to the affirmative defense that Hair Cuttery had a legitimate, non-discriminatory reason for terminating her. Request No. 12 seeks documents pertaining to Hobson's employment with Hair Cuttery. *See id*. Hobson argues that the investigative documents clearly pertain to her employment with Hair Cuttery. Request No. 13 seeks documents pertaining to the termination of Hobson's employment with Hair Cuttery. *See id*. Hobson contends that the investigative statements pertain to the termination of her employment. Request No. 19 seeks documents pertaining to the reason(s) Hair Cuttery terminated Hobson. *See id*. Hobson asserts that the investigative statements pertain to the reason that Hair Cuttery terminated Hobson, *i.e.*, she supposedly started an altercation with Newman and falsely reported an assault by Newman on March 17, 2005.

In spite of these discovery requests, Hair Cuttery neither produced the investigative statements in its initial response to Hobson's request for production of documents nor supplementally. The first time Hobson and undersigned counsel saw the investigative statements was when they were attached to the MSJ as exhibits.

Moreover, Hobson asserts that an incident report that should have been prepared by Edwards, as the manager in charge of the Bowie salon on March 17, 2005, under standard operating procedure of Hair Cuttery has been neither produced to her nor included in the investigative statements cited in and attached to the MSJ. *See* Affidavit of Hobson at Exhibit 4. While the investigative statement of Edwards attached to the MSJ at Tab N is undated, the investigative statements of Love and Newman attached to the MSJ at Tabs O and P, respectively, are both dated March 22, 2005. The reasonable

inference from the dated investigative statements is that Edwards prepared her investigative statement also on March 22, 2005. Thus, Hobson claims that Hair Cuttery has apparently excluded Edwards' incident report of March 17, 2005. *See id*. Further, she notes that Hair Cuttery does not present investigative statements from either her or the stylist, Monica Leach ("Leach"), who was nearest to Newman and her when Newman punched her hand so severely as to cause nerve damage to a finger. *See id*.

> Fed. R. Civ. Pro. 37(c)(1) provides, in pertinent part:
>
> "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing or **on a motion** any witness or Pro. 26(a)(5) provides, *inter alia*, for discovery by production of documents. Fed. R. Civ. Pro. 26(e)(1) places a party who has responded to a discovery request under a information not so disclosed." (emphasis added)

Fed. R. Civ. Pro. 26(e)(1) places a party who has responded to a discovery request under a duty to supplement its discovery responses if it learns that the information disclosed is incomplete. Fed. R. Civ. Pro. 26(e)(2) places a party under a duty seasonably to amend a prior response to a request for production if it learns that its response is in some material respect incomplete or incorrect.

The language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: 1) when the failure to disclose is substantially justified, and 2) when the nondisclosure is harmless. *Southern States Rack & Fixture v. Sherwin-Williams*, 318 F.3d 592, 596 (4th Cir. 2003). Neither of these requirements suggests that the nondisclosing party must act in bad faith or otherwise culpably. *Id*. Excluding evidence only when the nondisclosing party acted in bad faith would undermine the basic purpose of Rule 37(c)(1): preventing

surprise and prejudice to the opposing party. *Id.* Requiring proof that the nondisclosing party acted in bad faith would improperly shift the burden of proof away from that party on the exclusion issue. *Id*. Thus, it is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with Rule 37(c)(1) was either justified or harmless. *Id*.; *Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006).

The district court should be guided in a Rule 37(c)(1) exclusion analysis by the following factors: 1) the surprise to the party against whom the evidence would be offered; 2) the ability of that party to cure that surprise; 3) the extent to which allowing the evidence would disrupt the trial; 4) the importance of the evidence; and 5) the nondisclosing party's explanation for its failure to disclose the evidence. *Southern States Rack & Fixture v. Sherwin-Williams, supra,* 318 F.3d at 597. The district court has broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless. *Carr v. Deeds*, *supra*.

Hobson argues that exclusion of the investigative statements is appropriate. As to the first factor, Hobson had not seen in discovery and prior to the MSJ the investigative statements which are a critical component of Hair Cuttery's proffer of a legitimate, non-discriminatory reason to terminate her, *i.e*., the statements provided the basis for Hair Cuttery to believe that she had commenced the March 17, 2005 incident with Newman and had falsely reported an assault by Newman. Regarding the second factor, since Hobson did not have these investigative statements and who made them, she has had inadequate time to find Edwards, Love and Newman and inquire of them the circumstances surrounding these investigative statements, *e.g*., whether they were coerced or influenced in making them. Concerning the third factor, allowing the

investigative statements in as evidence gives an unfair advantage to Hair Cuttery in claiming that there is no genuine dispute as to whether its proffer of a legitimate, non-discriminatory reason for terminating Hobson is pretextual.  As to the fourth factor, the investigative statements are the underpinning for Hair Cuttery's asserted belief that Hobson commenced the March 17, 2005 incident and falsely reported an assault by Newman, which was the reason Hair Cuttery terminated her.  Regarding the fifth factor, Hair Cuttery is a large business with able counsel who should have no excuse for its failure to disclose the investigative statements.

      Hair Cuttery makes clear that its "honest belief" that Hobson started the altercation with Newman and falsely reported an assault by Newman was the result of its investigation of the incident and the three investigative statements of Edwards, Love and Newman.  It proffers that the investigation results were reported to Waters, who on that basis made the decision to terminate Hobson.  Hobson argues that exclusion of the investigative statements creates a genuine dispute as to whether Hair Cuttery's decision to terminate her was based on its honest belief that she was the aggressor in the incident, particularly in the absence of an incident report by Edwards and investigative statements by Leach and her.  She disputes both that she commenced the altercation with Newman and that she falsely reported that Newman assaulted her.  Rather, she asserts that Newman assaulted her and caused her grievous harm without justification or provocation.  Therefore, Hobson claims that summary judgment is inappropriate as to whether Hair Cuttery's proffer of its reason for terminating her was not pretextual.

      WHEREFORE, Hobson requests that the MSJ be DENIED.

           Respectfully submitted,


           _____/x/_____
           MARK G. CHALPIN, ESQ.
           Federal Bar # 14552
           1509 Woodwell Road
           Silver Spring, MD 20906
           (301) 460-5900

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing Opposition was sent electronically this 27th day of March, 2007, to:

Bernard P. Jeweler, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2400 N Street, N.W., Fifth Floor
Washington, D.C. 20037


           _____/x/_____
           Mark G. Chalpin